15-13100-AA

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

FLO & EDDIE, INC., a California corporation, individually and on behalf of all others similarly situated,

*Plaintiff-Appellant*,

v.

SIRIUS XM RADIO INC., a Delaware corporation,

*Defendant-Appellee*,

DOES 1 through 10,

*Defendants.*

On Appeal from the United States District Court
for the Southern District of Florida

## DEFENDANT-APPELLEE SIRIUS XM RADIO INC.'S OPPOSITION TO MOTION BY RECORDING INDUSTRY ASSOCIATION OF AMERICA, INC. FOR LEAVE TO FILE *AMICUS CURIAE* BRIEF

Jonathan D. Hacker
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
Telephone: (202) 383-5300

Daniel M. Petrocelli
Cassandra L. Seto
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067-6035
Telephone: (310) 553-6700

*Attorneys for Defendant-Appellee Sirius XM Radio Inc.*

Appeal No. 15-13100-AA

*Flo & Eddie, Inc. v. Sirius XM Radio Inc.*

## <u>CERTIFICATE OF INTERESTED PERSONS AND</u>

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Eleventh Circuit Rule 26.1-1, Sirius XM Radio Inc. hereby

certifies that the following trial judge(s), attorneys, persons, associations of

persons, firms, partnerships, or corporations that have an interest in the outcome of

this appeal, including any publicly held corporation owning 10% or more of the

party's stock, were omitted from the Certificate of Interested Persons and

Corporate Disclosure Statement in the Recording Industry Association of America,

Inc.'s Motion for Leave to File Amicus Curiae Brief:

Cohen, Evan

Hacker, Jonathan

Hogen Lovells, US LLP

Kaylan, Howard

Liberty Media Holdings Inc.

Sirius XM Holdings Inc. (NYSE: SIRI)

(continued on next page)

Appeal No. 15-13100-AA
*Flo & Eddie, Inc. v. Sirius XM Radio Inc*.

Turnoff, William

Volman, Mark

Dated:        September 21, 2015        O'MELVENY & MYERS LLP

By:  /s/ Daniel M. Petrocelli
                              Daniel M. Petrocelli
                              1999 Avenue of the Stars, 7th Floor
                              Los Angeles, CA 90067-6035
                              Telephone:  (310) 553-6700

*Attorneys for Defendant-Appellee Sirius XM Radio Inc.*

This Court may grant leave to file an *amicus curiae* brief where its content is "relevant to the disposition of the case" such that it offers "unique information or perspective that can help the court." Fed. R. App. P. 29(b)(2); *Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1063 (7th Cir. 1997). The proposed brief submitted by the Recording Industry Association of America, Inc. ("RIAA") in support of appellant Flo & Eddie, Inc.'s position falls short of this standard.

The RIAA is a trade organization that represents record companies and other recording owners. The RIAA's brief reduces to an argument that the district court's ruling was "bad policy," as Florida law *should* grant the owners of pre-1972 recordings an unfettered, unconditional right to control all performances of those recordings. Proposed Brief at 4. Toward that end, the RIAA cites pages of irrelevant facts about Florida's local music industry, the digital streaming industry, and the historical significance of certain pre-1972 recordings—*none* of which is owned by Flo & Eddie (or any other putative class member). *Id.* at 4-15.[1]

The RIAA's brief does not address any of the applicable law—which, as the district court rightly held, does *not* grant pre-1972 recording owners any right to restrict or demand royalties from performances of their recordings. Instead, the

---

[1] Every pre-1972 recording named in the RIAA's brief (*e.g.*, "What's Going On" and "(I Can't Get No) Satisfaction") is owned by the major record companies, which expressly authorized Sirius XM to perform and otherwise exploit those recordings in a 2015 settlement agreement. *See* Complaint Ex. A, *Capitol Records et al. v. Sirius XM Radio Inc.*, Case No. BC520981(Cal. Super. Ct. Sept. 11, 2013).

RIAA claims that its arguments are based on "common sense" and "fundamental fairness." *Id.* at 15. Such policy arguments—which are not supported by any legal analysis—are neither relevant to the issues on appeal nor helpful to the Court. This Court should reject the RIAA's improper effort to "inject interest-group politics into the federal appellate process." *Nat'l Org. for Women, Inc. v. Scheidler*, 223 F.3d 615, 617 (7th Cir. 2000); *see Voices for Choices v. Ill. Bell Tel. Co.*, 339 F.3d 542, 544-45 (7th Cir. 2003) (judicial process "is not democratic in the sense of basing decision[s] on … interest groups" and fact that "powerful … organizations support or oppose an appeal is … irrelevant to judicial decision making").

Not only are the RIAA's policy arguments irrelevant and unhelpful, they are wrong. As the district court recognized, creating a performance right that never before existed under state *or* federal law would create widespread policy problems and hurt the majority of stakeholders. Appellant's Appendix, Vol. 2, Doc. 142 at 8-10. Sound recordings are unique among creative works in that they involve competing stakeholders, including composers (who have a copyright in the underlying musical composition and receive performance royalties under federal law), performing artists, recording owners (in most cases, the record company), broadcasters, and the public.

For nearly a century, Congress expressly declined to grant recording owners any right to control performances of their recordings, which would hand a windfall

to recording owners, while harming composers and performing artists (by reducing performances of their songs and thus their royalties and publicity), broadcasters (by increasing costs), and the public (by decreasing access to music). In 1995, Congress enacted the Digital Performance Right in Sound Recordings Act ("DPRA"), which established a *limited* digital performance right for *post*-1972 recordings that was carefully crafted to balance the interests of all stakeholders. The DPRA includes key limitations—including a carve-out for AM/FM radio—as well as a compulsory licensing scheme to ensure that broadcasters like Sirius XM can obtain a statutory license to perform a post-1972 recording at a reasonable royalty rate, and a requirement that recording owners share half of the license fees with performing artists instead of pocketing the money for themselves. *See* H.R. REP. NO. 104-274 (1995); S. REP. NO. 104-128 (1995).

The RIAA urges this Court to invent a right under Florida law granting pre-1972 recording owners absolute, unconditional authority to control all performances of their recordings. Not only would this violate the settled principle that the creation of a right that would dramatically alter the common law and affect the interests of many stakeholders should be a matter of legislative discretion rather than judicial will, *see* Appellant's Appendix, Vol. 2, Doc. 142 at 8-10, it would create massive administrative and policy problems. A common-law performance right would not, and could not, contain any of the limitations and

legislative balancing of the DPRA—for example, it would not include any carve-out for AM/FM radio, any compulsory licensing scheme—meaning that broadcasters and others seeking to perform pre-1972 recordings would be at the mercy of recording owners, who could demand exorbitant royalty rates or refuse to license their recordings at all—or any protection for performing artists.  While the RIAA purports to advocate on behalf of "local performers, musicians, [and] managers," Proposed Brief at 4, *none* of these stakeholders would actually benefit from a common-law performance right—only the recording owner would be entitled to royalties, with no obligation or incentive to share half those royalties with performing artists.

For all of the foregoing reasons, this Court should deny the RIAA's motion for leave to submit an *amicus curiae* brief.

Dated:      September 21, 2015      O'MELVENY & MYERS LLP

By: /s/ Daniel M. Petrocelli
Daniel M. Petrocelli
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067-6035
Telephone:  (310) 553-6700

*Attorneys for Defendant-Appellee Sirius XM Radio Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, Daniel M. Petrocelli, a member of the Bar of this Court, hereby certify that on September 21, 2015, I caused a true and correct copy of  Defendant-Appellee Sirius XM Radio Inc.'s Opposition To Motion By Recording Industry Association Of America, Inc. For Leave To File Amicus Curiae Brief to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit through the CM/ECF system.  All participants are registered CM/ECF users, and will be served by the appellate CM/ECF system.

Dated:          September 21, 2015          <u>/s/ Daniel M. Petrocelli</u>
                                                          Daniel M. Petrocelli