# 15-13100-AA

## United States Court of Appeals
*for the*
## Eleventh Circuit

FLO & EDDIE, INC., a California Corporation,
individually and on behalf of all others similarly situated,

*Plaintiff-Appellant,*

- v. -

SIRIUS XM RADIO, INC., a Delaware Corporation,

*Defendant-Appellee,*

DOES 1 THROUGH 10,

*Defendants.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

**PLAINTIFF-APPELLANT FLO & EDDIE, INC.
REPLY BRIEF**

HENRY GRADSTEIN
MARYANN R. MARZANO
HARVEY GELLER
GRADSTEIN & MARZANO, P.C.
6310 San Vicente Blvd, Suite 510
Los Angeles, California 90048
(323) 776-3100

GLEN H. WALDMAN
JASON T .GORDON
ELEANOR T. BARNETT
HELLER WALDMAN, P.L.
3250 Mary Street, Suite 102
Coconut Grove, Florida 33133
(305) 448-4144

*Attorneys for Plaintiff-Appellant Flo & Eddie, Inc.*

# **TABLE OF CONTENTS**

I.  INTRODUCTION ......................................................................... 1

II.  FLORIDA PROTECTS ALL RIGHTS
IN PRE-1972 RECORDINGS......................................................... 4

    A.  Florida Law Is The Only Applicable Law ......................................... 4

    B.  Federal Law Is Inapplicable ............................................................. 7

    C.  Common Law Rights Do Not Require Legislation To Exist ........... 11

    D.  SiriusXM's Reliance On *Whiteman* Is Misplaced ........................... 13

    E.  Public Policy Considerations Are Not
The Province Of The Court................................................................ 16

III.  PROTECTING PRE-1972 RECORDINGS DOES NOT VIOLATE
THE COMMERCE CLAUSE ..................................................... 17

    A.  Congress Has Authorized State Protection
Of Pre-1972 Recordings.................................................................. 18

    B.  Protection Of Pre-1972 Recordings Does Not "Regulate"
Interstate Commerce......................................................................... 21

    C.  A Public Performance Right Does Not Violate
Either The Per Se Or Balancing Tests.............................................. 23

        1.  Per Se ..................................................................................... 23

        2.  Balancing Test........................................................................ 27

IV.  IT WAS ERROR FOR THE DISTRICT COUNT TO SUMMARILY
ADJUDICATE THE NON-COPYRIGHT CLAIMS ................. 31

    A.  Unfair Competition.......................................................................... 31

B.      Conversion and Civil Theft ............................................................ 35

V.     SIRIUSXM IS LIABLE FOR ITS REPRODUCTIONS ........................... 39

VI.    CONCLUSION ............................................................................................ 40

# TABLE OF AUTHORITIES

## Cases

*A&M Records, Inc. v. Heilman*,
　　75 Cal. App. 3d 554 (1977) ........................................................25

*Access Now, Inc. v. Southwest Airlines Co.*,
　　385 F.3d 1324 (11th Cir. 2004) ...................................................9

*ACLU v. Johnson*,
　　194 F.3d 1149 (10th Cir. 1999) ..................................................29

*AlphaMed Pharms. Corp. v. Arriva Pharms., Inc.*,
　　432 F. Supp. 2d 1319 (S.D. Fla. 2006) .......................................33

*Am. Booksellers Found. v. Dean*,
　　342 F.3d 96 (2d Cir. 2003) .........................................................27

*Am. Libraries Ass'n v. Pataki*,
　　969 F. Supp. 160 (S.D.N.Y. 1997) ....................................... 29, 30

*Arrow Air, Inc.* v. *Port Auth. Of New York and New Jersey*,
　　602 F. Supp. 314 (S.D.N.Y. 1985) .............................................23

*Automated Salvage Transp., Inc. v. Wheelabrator Envtl. Sys., Inc.*,
　　155 F.3d 59 (2d Cir. 1998) .........................................................28

*Beyond Sys. v. Keynetics, Inc.*,
　　422 F. Supp. 2d 523 (D. Md. 2006)............................................30

*Big Sur Waterbeds v. Maryland Cas. Co.*,
　　1992 U.S. Dist. LEXIS 22596 (C.D. Cal. Dec. 22, 1992)............32

*BMW of N. Am. v. Gore*,
　　517 U.S. 559, 116 S. Ct. 1589 (1996) ........................................22

*Bowers v. NCAA, Inc.*,
　　151 F. Supp. 2d 526 (D. N.J. 2001)............................................20

*Capitol Records, Inc. v. Mercury Records Corp.,*
   221 F.2d 657 (2d Cir. 1955) .................................................. 13, 14

*Capitol Records, LLC v. SiriusXM Radio, Inc.,*
   2014 WL 7387972 (Cal. Super. Ct. Oct. 14, 2014).........................................3

*CBS, Inc. v. Garrod,*
   622 F. Supp. 532 (M.D. Fla. 1985) ....................................................... passim

*Costa Del Sol Ass'n v. Dep't of Bus. & Prof'l Regulation,*
   *Div. of Fla. Land Sales, Condos., & Mobile Homes,*
   987 So. 2d 734 (Fla. Dist. Ct. App. 2008)...................................................1, 5

*Country Manors Asso. v. Master Antenna Sys.,*
   534 So. 2d 1187 (Fla. Dist. Ct. App. 1988)..................................................38

*Cox v. Adm'r United States Steel & Carnegie,*
   17 F.3d 1386 (11th Cir. 1994) ........................................................38

*Dep't of Ins. v. Dade Cnty. Consumer Advocate's Office,*
   492 So. 2d 1032 (Fla. 1986) ............................................................1

*Dep't of Law Enforcement v. Real Prop.,*
   588 So. 2d 957 (Fla. 1991) ............................................................. 1, 5, 28

*Dowling v. United States,*
   473 U.S. 207, 105 S.Ct. 3127 (1985) ............................................................8

*Ediciones Musicales y Representaciones Internacionales, S.A. v. San Martin,*
   582 F. Supp. 2d 1358 (S.D. Fla. 2008)..........................................................33

*Erie R.R. v. Tompkins,*
   304 U.S. 64, 58 S.Ct. 817 (1938) ....................................................33

*Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd,*
   762 F.3d 829 (9th Cir. 2014) ....................................................25

*Exxon Corp. v. Governor of Md.,*
   437 U.S. 117, 98 S. Ct. 2207 (1978) ............................................. 18, 23, 29

*Ferguson v. FriendFinders, Inc.*,
    94 Cal. App. 4th 1255 (2002) .............................................................. 24, 26

*Flo & Eddie Inc. v. Sirius XM Radio Inc*.,
    2014 U.S. Dist. LEXIS 139053 (C.D. Cal. Sept. 22, 2014) ...........................3

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc*.,
    62 F. Supp. 3d 325 (S.D.N.Y. 2014) .............................................................3

*Flood v. Kuhn*,
    407 U.S. 258, 92 S. Ct. 2099 (1972) ...........................................................26

*Ford Motor Co. v. Texas Dep't of Transp*.,
    106 F. Supp. 2d 905 (W.D. Tex. 2000) .......................................................30

*Garrido v. Burger King Corp*.,
    558 So. 2d 79 (Fla. Dist. Ct. App. 1990)......................................................37

*GMC v. Tracy*,
    519 U.S. 278 (1997)......................................................................................22

*Goldstein v. California*,
    412 U.S. 546, 93 S.Ct. 2303 (1973) ....................................................... 19, 26

*Head v. N.M. Bd. of Examiners in Optometry*,
    374 U.S. 424, 83 S. Ct. 1759 (1963) ...........................................................22

*Healy v. Beer Inst.*,
    491 U.S. 324, 109 S. Ct. 2491 (1989) .........................................................27

*Hendler v. United States*,
    952 F.2d 1364 (Fed. Cir. 1991) ...................................................................34

*Hughes v. Oklahoma*,
    441 U.S. 322, 99 S. Ct. 1727 (1979) ...........................................................27

*Huron Portland Cement Co. v. Detroit*,
    362 U.S. 440, 80 S. Ct. 813  (1960) .............................................................22

*In re Colonial Realty Co.*,
    980 F.2d 125 (2d Cir. 1992) ........................................................10

*Int'l News Serv. v. AP*,
    248 U.S. 215, 39 S.Ct. 68 (1918) ...............................................33

\*Intelsat Corp. v. Multivision TV LLC,
    2010 U.S. Dist. LEXIS 138955 (S.D. Fla. Dec. 27, 2010)...........36

\*Joe Hand Promotions, Inc. v. Hart,
    2012 U.S. Dist. LEXIS 53335 (S.D. Fla. Apr. 16, 2012)............36

*John Doe Co. v. United States*,
    350 F.3d 299 (2d Cir. 2003) ........................................................39

*Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc.*,
    552 F.3d 1033 (9th Cir. 2009) .....................................................38

*L.P. Acquisition Co. v. Tyson*,
    772 F.2d 201 (6th Cir. 1985) .......................................................21

*Leviton Mfg. Co. v. Greenberg Traurig LLP*,
    2010 WL 4983183 (S.D.N.Y. Dec. 6, 2010)................................39

*Maronda Homes, Inc. v. Lakeview Reserve Homeowners Ass'n*,
    127 So. 3d 1258 (Fla. 2013) ................................................. 2, 11

*Metro. Opera Ass'n v. Wagner-Nichols Recorder Corp.*,
    199 Misc. 786 (Sup. Ct. 1950)....................................................14

*Microsoft Corp. v. Big Boy Distrib. LLC*,
    589 F. Supp. 2d 1308, 1324 (S.D. Fla. 2008) .............................32

*Morris Communs. Corp. v. PGA Tour, Inc.*,
    117 F. Supp. 2d 1322 (M.D. Fla. 2000) ......................................34

*Morton v. Mancari*,
    417 U.S. 535, 94 S.Ct. 2474 (1974) ............................................10

*Nat'l Collegiate Athletic Ass'n v. Miller*,
10 F.3d 633 (9th Cir. 1993) ..........................................................26

*Nat'l Elec. Mfrs. Ass'n v. Sorrell*,
272 F.3d 104 (2d Cir. 2001) ..........................................................27

*Nat'l Fed'n of the Blind v. Target Corp.*,
452 F. Supp. 2d 946 (N.D. Cal. 2006)....................................23, 30

*Nat'l Union Fire Ins. Co. v. Siliconix, Inc.*,
729 F. Supp. 77 (N.D. Cal. 1989).................................................32

*Ne. Bancorp v. Bd. of Governors of Fed. Reserve Sys.*,
472 U.S. 159, 105 S.Ct. 2545 (1985) ............................................18

*New Energy Co. v. Limbach*,
486 U.S. 269, 108 S. Ct. 1803  (1988) ..........................................18

*New England Power Co. v. New Hampshire*,
455 U.S. 331, 102 S. Ct. 1096 (1982) ...........................................19

*Newdow v. Rio Linda Union Sch. Dist.*,
597 F.3d 1007 (9th Cir. 2010) .........................................................7

*People ex rel State Bar Resources Bd. v. Wilmhurst*,
68 Cal. App. 4th 1332 (1999) ........................................................21

*People ex rel. Brown v. PuriTec*,
153 Cal. App. 4th 1524 (2007) ......................................................30

*Pike v. Bruce Church, Inc.*,
397 U.S. 137, 90 S. Ct. 844 (1970) ..........................................27-29

*Posadas v. Nat'l City Bank*,
296 U.S. 497, 56 S.Ct. 349 (1936) ................................................10

*Randall v. Guenther*,
650 So. 2d 1070 (Fla. Dist. Ct. App. 1995) ..................................13

*Ray v. Spirit Airlines, Inc.,*
  767 F.3d 1220 (11th Cir. 2014) ..................................................10

*RCA Mfg. Co. v. Whiteman,*
  114 F.2d 86 (2nd Cir. 1940) .............................................. 13-16

*Riley v. Nat'l Fed'n of Blind,*
  487 U.S. 781, 108 S. Ct. 2667 (1988) .........................................24

*Rodriguez v. United States,*
  480 U.S. 522, 107 S. Ct. 1391 (1987) .........................................10

*Rothschild v. Kisling,*
  417 So. 2d 798 (Fla. Dist. Ct. App. 1982) ...................................11

*Ruckelshaus v. Monsanto Co.,*
  467 U.S. 986, 104 S. Ct. 2862 (1984) ...........................................5

*S. Waste Sys., LLC v. City of Coral Springs,*
  687 F. Supp. 2d 1342 (S.D. Fla. 2010) .................................. 27, 28

*Sea Air Shuttle v. Virgin Islands Port Authority,*
  800 F. Supp. 293 (D.V.I. 1992) ..................................................20

*Sebastiano v. Fla.,*
  14 So. 3d 1160 (Fla. Dist. Ct. App. 2009) ...................................37

*Shaw v. State,*
  510 So. 2d 349 (Fla. 2d DCA 1987) ...........................................37

*\*Sherlock v. Alling,*
  93 U.S. 99, 23 L. Ed. 819 (1876) ......................................... 21, 22

*Siplin v. State,*
  972 So. 2d 982 (Fla. Dist. Ct. App. 2007) ...................................38

*\*SmokEnders, Inc. v. Smoke No More, Inc.,*
  1974 U.S. Dist. LEXIS 6183 (S.D. Fla. 1974) ......................... 5, 11

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
464 U.S. 417, 104 S.Ct. 774 (1984) ............................................................8

*Sony Music Entm't v. Clark Entm't Grp.*,
183 B.R. 73 (Bankr. D.N.J. 1995) .............................................................34

*Soto* v. *Tu Phuoc Nguyen*,
634 F. Supp. 2d 1096 (E.D. Cal. 2009) ....................................................20

*St. Johns River Water Mgmt. Dist. v. Koontz*,
861 So. 2d 1267 (Fla. 5th DCA 2003).........................................................5

*State v. Dunmann*,
427 So. 2d 166 (Fla. 1983) .......................................................................38

*State v. Egan*,
287 So. 2d 1 (Fla. 1973) .............................................................................7

*State v. Heckel*,
143 Wash. 2d 824 (2001) ..........................................................................30

*State v. West*,
262 So. 2d 457 (Fla. Dist. Ct. App. 1972)..................................................37

*\*Tatum Bros. Real Estate & Inv. Co. v. Watson*,
92 Fla. 278 (1926).................................................................................1, 5

*Tedder v. State*,
73 Fla. 861 (1917).....................................................................................38

*Thales Avionics, Inc. v. Matsushita Avionics Sys. Corp*,
2004 U.S. Dist. LEXIS 32433 (C.D. Cal. Aug. 6, 2004) ............................26

*Thomas v. Crosby*,
371 F.3d 782 (11th Cir. 2004) ...................................................................10

*Total Mktg. Techs. v. Angel Medflight Worldwide Air Ambulance Servs., LLC*,
2012 U.S. Dist. LEXIS 1829 (M.D. Fla. Jan. 6, 2012) ................................36

*United States v. Bilzerian,*
 926 F.2d 1285 (2d Cir. 1991) ........................................................38

*United States v. Griffin,*
 699 F.2d 1102 (11th Cir. 1983) ......................................................7

*\*Waring v. WDAS Broadcasting Station, Inc.,*
 327 Pa. 433 (1937)........................................................................16

*Warshall v. Price,*
 629 So. 2d 903 (Fla. Dist. Ct. App. 1993)............................... 35, 36

*WCVB-TV v. Boston Athletic Ass'n,*
 926 F.2d 42 (1st Cir. 1991)............................................................34

*\*White v. Mass. Council of Const. Employers, Inc.,*
 460 U.S. 204, 103 S.Ct. 1042 (1983) ............................................19

*Zimmerman v. Wolff,*
 622 F. Supp. 2d 240 (E.D. Pa. 2008)..............................................20

## **Statutes**

17 U.S.C. §106 ...................................................................................9

17 U.S.C. §107 .................................................................................39

17 U.S.C. §114 ...................................................................................9

17 U.S.C. §115 ...................................................................................9

17 U.S.C. §301(a) .............................................................................37

17 U.S.C. §301(c) ....................................................................... passim

Fla. Const. Art. I, §2.................................................................. 4, 6, 28

Fla. Stat. §495.131 ...........................................................................25

Fla. Stat. §540.08 .............................................................................25

x

Fla. Stat. §540.11 ........................................................ 4, 12, 25

Fla. Stat. §540.11(1)(a) ...................................................1

Fla. Stat. §540.11(6)(a) ..................................................12

Fla. Stat. §543.02 ....................................................... 11, 12

Fla. Stat. §812.012(4)(b) ............................................... 1, 4, 6

Fla. Stat. §812.014(1)...................................................38

## Other Authorities

5 W.F. Patry, *Patry On Copyright*, §18:55 (2010 ed.) .........................................20

*Application for Special Temporary Authority*,
    16 FCC Rcd 16773 (F.C.C. 2001)...................................................24

*Applications for Consent to the Transfer of Control of Licenses*,
    23 FCC Rcd 12348 (F.C.C. 2008)....................................... 24, 25

*Black's Law Dictionary* 1461 (9th ed.)....................................................19

Library of Congress: Copyright Office, Music Licensing Study:
    Second Request for Comments, 79 Fed. Reg. 141 (July 23, 2014) ..............15

*Notice of Proposed Rulemaking*,
    22 FCC Rcd 22123 (F.C.C. 2007)....................................................24

*Oxford English Dictionary* (2d. ed. 1989) ............................................32

Pub. L. No. 105-298, 112 Stat. 2827 (1998).........................................11

*Random House College Dictionary* 1011 (rev. ed. 1980) ......................................32

## I.    <u>INTRODUCTION</u>.

What SiriusXM cannot dispute – and what is fatal to all of its arguments – is that Florida (like many states) considers the artistic performances embodied in pre-1972 recordings (*i.e.*, ***the sounds***) to be "property" under both the state's common law and civil theft statutes.  *See* Fla. Stat. §540.11(1)(a); *CBS, Inc. v. Garrod*, 622 F. Supp. 532, 533 (M.D. Fla. 1985); and Fla. Stat. §812.012(4)(b).  Indeed, Florida law makes clear that the ownership of those recorded artistic performances:

- is constitutionally protected, *Dep't of Law Enforcement v. Real Prop.*, 588 So. 2d 957, 964 (Fla. 1991);

- includes "all of the sticks or incidents of ownership," *Costa Del Sol Ass'n v. Dep't of Bus. & Prof'l Regulation, Div. of Fla. Land Sales, Condos., & Mobile Homes*, 987 So. 2d 734, 736 (Fla. 3d DCA 2008);

- "is nearly absolute," *Dep't of Ins. v. Dade Cnty. Consumer Advocate's Office*, 492 So. 2d 1032, 1039 n. 3 (Fla. 1986); and

- carries with it the right and ability to exclude others from all unauthorized uses, *Tatum Bros. Real Estate & Inv. Co. v. Watson*, 92 Fla. 278, 289 (1926).

In an attempt to circumvent these basic tenets of Florida property law, SiriusXM asks this Court to instead unbundle the rights inherent in ownership of pre-1972 recordings and pick winners and losers among them.  That is not the role

of the court.  Because ownership of the artistic performances includes the entire bundle of rights attendant to that ownership, there is no need to distinguish among the various rights; *they are all protected*.  And because the concomitant ability to exclude extends to all unauthorized uses of the artistic performances, the method of infringement chosen by SiriusXM (*i.e.*, reproduction, distribution, *or* public performance) is of no consequence; *all unlicensed uses are forbidden*.  It is precisely because Florida property law is so clear that SiriusXM has opted instead to attack its very existence with three very misguided arguments.

*First*, SiriusXM asserts that legislative action is a necessary prerequisite for the common law rights at issue in this case to be enforced.  SiriusXM has that backwards; rights exist at common law whether or not they have been granted by the legislature, and they exist until the legislature expresses an unequivocal intent to abolish them.  *Maronda Homes, Inc. v. Lakeview Reserve Homeowners Ass'n*, 127 So. 3d 1258, 1268 (Fla. 2013).  SiriusXM's contrary argument renders its own brief internally inconsistent.  Indeed, SiriusXM readily concedes that the *reproduction* right is an unquestioned part of Florida common law even though that right has *also* never been specifically granted by the Florida legislature.  It is intellectually dishonest for SiriusXM to argue that legislative action is needed for the public performance right to exist, yet not for the reproduction right.

2

***Second***, SiriusXM tries to nullify Florida law with supposed private "understandings" between the music and broadcasting industries **(SXM:9-11)**[1], inapposite federal copyright law and the history of the performance right in ***post***-1972 recordings **(SXM:12-23)**, a Second Circuit case that was overturned 60 years ago because it wrongly ***predicted*** New York law **(SXM:10-11)**, cherry-picked secondary sources that contain the personal musings of professors, bloggers, reporters, and law students **(SXM:11, fn.3)**, and irrelevant public policy arguments **(SXM:30-34)**.  These misguided arguments cannot act as substitute for actual legal authority and are simply intended to create confusion where none exists.

***Third***, SiriusXM attempts to invoke the dormant Commerce Clause to prevent Florida from protecting against the theft of property occurring within its own borders.  According to SiriusXM, its status as a national company *constitutionally* prevents Florida from enforcing non-discriminatory laws that make stealing illegal.  SiriusXM's view of the Commerce Clause's reach runs afoul of extensive Supreme Court precedent and, not surprisingly, has now been rejected by four different courts (including the District Court).[2]

---

[1] "SXM" refers to the brief filed in this appellate proceeding by SiriusXM in opposition to Flo & Eddie's opening brief, which is referred to "F&E".

[2] *Flo & Eddie, Inc. v. Sirius XM Radio, Inc*., 62 F. Supp. 3d 325, 349-53 (S.D.N.Y. 2014); *Capitol Records, LLC v. SiriusXM Radio, Inc.*, 2014 WL 7387972, *5 (Cal. Super. Ct. Oct. 14, 2014); *Flo & Eddie Inc. v. Sirius XM Radio Inc*., 2014 U.S. Dist. LEXIS 139053, *23 (C.D. Cal. Sept. 22, 2014).

## II.  FLORIDA PROTECTS ALL RIGHTS IN PRE-1972 RECORDINGS.

Because the scope of common law property rights is as broad as the Florida Constitution and the Florida Supreme Court say it is, and because the civil theft statute is as broad as the Florida legislature worded it, SiriusXM's has embarked on an "anything but Florida law" strategy.  However, the analysis in this case must begin and end with Florida law; not with federal law, not with an overruled New York case, and not with the "understandings," "consensuses," and secondary sources that SiriusXM believes somehow all trump Florida law.

### A.  Florida Law Is The Only Applicable Law.

The applicable Florida law is quite simple and powerful, starting with the recognition that the artistic performances (*i.e.*, the sounds) embodied in pre-1972 recording are property.  Fla. Stat. §540.11 (statute defining "owner" of a sound recording as "the person who owns the original sounds embodied in the master phonograph record"); *Garrod*, 622 F. Supp. at 533 (M.D. Fla. 1985) (holding that performances embodied in recordings are protected property); Fla. Stat. §812.012(4)(b) (defining property to be "anything of value" including "rights, privileges, interests, and claims" in intangible personal property and "anything of value resulting from a person's physical or mental labor or skill...").

Because the artistic performances are property, their ownership and protection are constitutionally guaranteed.  Fla. Const. Art. I, §2; *Dep't of Law*

*Enforcement*, 588 So. 2d at 964. That protection extends to the ***entire*** bundle of rights, *Costa Del Sol Ass'n*, 987 So. 2d at 736, including the most essential stick in the bundle: the right to exclude all unauthorized uses. *Tatum Bros.*, 92 Fla. at 289 (1926); *St. Johns River Water Mgmt. Dist. v. Koontz*, 861 So. 2d 1267, 1271 (Fla. 5th DCA 2003); *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1011, 104 S. Ct. 2862 (1984). These immutable principles put an end to SiriusXM's arguments, as they operate to bar *any* method of infringement (reproduction, distribution, ***or*** public performance) chosen by SiriusXM. *See e.g.*, *SmokEnders, Inc. v. Smoke No More, Inc.*, 1974 U.S. Dist. LEXIS 6183, *30-31 (S.D. Fla. Oct. 21, 1974).

SiriusXM relegates all of this law to a footnote in its brief **(SXM:fn.5)**, simply proclaiming that "general principles" of Florida property law "do not support the intangible property rights" that Flo & Eddie seeks to enforce. **(SXM:18-19)** As support for this statement, SiriusXM relies on generalized statements from two law school textbooks that rights in property are limited by the "legitimate interests of others." *Id*. SiriusXM never explains what legitimate interest it could possibly have in recordings that it readily admits it does not own and does not have licenses to exploit. Theft is never a legitimate interest, and this is true ***even when the property at issue is intangible***. Contrary to SiriusXM's unsupported argument, intangible property is not a lesser form of property, nor is it

"contingent" – it is entitled to the same level of protection as all other property in Florida.  *See* Fla. Const. Art. I, §2; Fla. Stat. §812.012(4)(b); **F&E:20-29**.[3]

Because Florida protects all of the intangible rights inherent in ownership in pre-1972 recordings – most importantly, ***the right to exclude all unauthorized uses*** – it was error for the District Court to conclude that one of those unauthorized uses (public performance) was not an enforceable right simply because it could not find a case specifically acknowledging it as a separately defined right.  Florida's common law does not require the level of granularity demanded by the District Court, nor does Florida limit its common law to only the specific facts and issues addressed in earlier cases.

Such rigidity is the tent pole of SiriusXM's argument, as it depends on a narrow construction of Florida law bounded by the precise conduct at issue in *Garrod*.  **(SXM:23-24)**  However, merely because the specific reproduction allegations in *Garrod* drove the finding of liability in that particular case, it does not follow that the court was defining the full scope of Florida law regarding pre-1972 recordings in connection with cases (and issues) that were not before it.

---

[3] As part of its attempt to undermine the scope of Florida law, SiriusXM also quotes an October 1960 article in the University of Chicago's Journal of Law & Economics for the generic proposition that "the rights of a land-owner are not unlimited."  **(SXM:19)**  That article concerns businesses that have harmful effects on others, using as its example a factory that emits harmful smoke.  Inapposite comparisons like this are almost self-objecting.  More importantly, this case is not about what Flo & Eddie can do with its property, but what SiriusXM can do with Flo & Eddie's property.

Indeed, the *Garrod* court could not do that even if it wanted to, as it was limited to deciding the actual issues in that case. *See United States v. Griffin,* 699 F.2d 1102 (11th Cir. 1983) ("The concept of judicial economy does not warrant determinations of issues not before the court."); *Newdow v. Rio Linda Union Sch. Dist.*, 597 F.3d 1007, 1041 (9th Cir. 2010) ("A federal court has neither the power to render advisory opinions nor to decide questions that cannot affect the rights of litigants in the case before them.") (citations omitted)

Moreover, SiriusXM's argument that all unauthorized uses of pre-1972 recordings ***not*** discussed in *Garrod* somehow ceased to exist simply because they were not discussed would act as an impermissible narrowing of the civil theft statute and would be contrary to the Florida Supreme Court's admonition against constraining the common law. As the Florida Supreme Court has made very clear:

> The common law has not become petrified; it does not stand still. It continues in a state of flux. And, its ever present fluidity enables it to meet and adjust itself to shifting conditions and new demands.

*State v. Egan*, 287 So. 2d 1, 7 (Fla. 1973)

What defines the scope of protection is ownership, not how ownership has been enforced in other cases based on the specific factual situations of those cases.

**B.    Federal Law Is Inapplicable.**

In ruling against Flo & Eddie, the District Court relied exclusively on federal copyright law to limit Florida law in direct violation of 17 U.S.C. §301(c). The

District Court is not solely to blame for this error, as it was specifically encouraged by SiriusXM. **(Doc.77)** Because that approach worked, SiriusXM – now joined by its amici – have invited the exact same error by larding up their arguments with federal copyright cases, the protection of ***post***-1972 recordings under the federal Copyright Act, the history of the public performance right in ***post***-1972 recordings, Congressional legislative history and testimony regarding the federal Copyright Act, and reports and studies provided to Congress by the Copyright Office, none of which has any applicability to this case.[4] SiriusXM defends the use of federal copyright law by stating that federal courts "frequently look to federal law for guidance." **(SXM:22)** That may be true, ***but not when Congress has explicitly barred them from doing so, as it did in §301(c)***.[5]

The bottom line is that federal copyright law has no role to play in determining the protections accorded to pre-1972 recordings in Florida. That includes the observations drawn from *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 104 S.Ct. 774 (1984) and *Dowling v. United States*, 473 U.S. 207, 216, 105 S.Ct. 3127, 3133 (1985) regarding the scope of ***federal*** copyright

---

[4] Amici's focus on federal law and Congressional legislative history and testimony is remarkable both in its volume and in its irrelevance. **(EFF:3-4, 6, 7, 9-13; NAB:10-14; Pandora:3, 5, 7-8, 11-23, 25-29; IP Professors:3-8, 13-18, 22-24; ARSC:3-4, 8, 10-12, 14-16 and Various Professors:2-37)**

[5] SiriusXM's insistence that Congress "is far better suited than Florida to regulate rights in pre-1972 recordings" **(SXM:40)** completely ignores that Congress already expressly declined that invitation when it enacted §301(c).

protection under 17 U.S.C. §106.  By definition, §106 is more limited than state law because it is an exclusive list of federally-granted statutory rights.  **(SXM:19, 21)**  State common law, however, is a very different animal; it starts from the premise that all rights inherent in ownership of property are protected unless excluded by the legislature.  Looking to the limited enumerated rights provided by §106 in order to "guide" interpretation of the otherwise expansive protections of the common law is simply code for doing exactly what §301(c) prohibits.

SiriusXM makes one final attempt to burrow under the wall Congress created in §301(c) by suggesting that federal law is *still* applicable because traditional state law property rights purportedly conflict with the federal licensing scheme created by the Digital Performance Right in Sound Recordings Act of 1995 ("DPRA").[6]  The factual premise of that argument (namely, that there is conflict) is an impossibility given that the DPRA covers only ***post***-1972 recordings (*see generally* 17 U.S.C. §§114-15) and Florida's common law covers only ***pre***-1972 recordings.  The legal premise of the argument is also infirm; namely, that Congress impliedly repealed §301(c) when it enacted the DPRA by silently occupying the field with regard to public performance of ***all*** sound recordings, thereby preempting state law under the Supremacy Clause.  SiriusXM and its amici

---

[6] Because SiriusXM presents this argument only in a footnote and never actually develops it substantively, it should not even be considered by the Court.  *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004).

ignore that Congress is never presumed to override statutory provisions by implication, *Morton v. Mancari*, 417 U.S. 535, 549, 94 S.Ct. 2474 (1974), and instead must clearly manifest its intent to do so. *Posadas v. Nat'l City Bank*, 296 U.S. 497, 503, 56 S.Ct. 349 (1936); *Rodriguez v. United States*, 480 U.S. 522, 524, 107 S. Ct. 1391 (1987); *Ray v. Spirit Airlines, Inc.*, 767 F.3d 1220, 1221 (11th Cir. 2014).

Here, the failure of Congress to even mention pre-1972 recordings in the DPRA or an intent to depart from §301(c)'s bifurcated treatment of recordings speaks volumes, since it is "presumed that Congress 'legislates with knowledge of former related statutes,' and will expressly designate the provisions whose application it wishes to suspend, rather than leave that consequence to the uncertainties of implication compounded by the vagaries of judicial construction." *In re Colonial Realty Co.*, 980 F.2d 125, 132-33 (2d Cir. 1992) (citations omitted). If Congress wanted to change the broad language of §301(c), it would have done so by changing §301(c), not by silently limiting it in the DPRA. *Thomas v. Crosby*, 371 F.3d 782, 808 (11th Cir. 2004).

That Congress never intended to have the DPRA act as an implied repeal of §301(c) was further reinforced in 1998 (three years *after* passage of the DPRA) when it passed the Sonny Bono Copyright Term Extension Act, pursuant to which it ratified §301(c) by extending state law protection of pre-1972 recordings from

10

2047 to 2067.  Pub. L. No. 105-298, 112 Stat. 2827 (1998).  This express

ratification and expansion of rights does away with any argument that Congress

impliedly narrowed §301(c) three years earlier.

### C.  Common Law Rights Do Not Require Legislation To Exist.

The District Court, SiriusXM, and many of the amici insist that legislative

action is a necessary prerequisite for a property right to exist under Florida

common law.  They are wrong.  Rights exist at common law whether or not they

have been granted by the legislature, and they exist until the legislature expresses

an unequivocal intent to abolish them.  *Maronda Homes, Inc.,* 127 So. 3d at 1268

("The Florida Statutes require that the common law is applicable unless it is

inconsistent with the Constitution and laws of the United States and the acts of the

Legislature of this State.").  It is for this reason that a universally-accepted

*reproduction* right exists in Florida even though the Florida legislature has never

granted it.  *Garrod*, 622 F. Supp. at 534-535; *SmokEnders*, 1974 U.S. Dist. LEXIS

6183 *30-31; *Rothschild v. Kisling*, 417 So. 2d 798, 800 (Fla. Dist. Ct. App. 1982).

In any event, the legislature *did* speak with its 1977 repeal of Fla. Stat.

§543.02, which prior to that date had limited the right to control "commercial use"

of pre-1972 sound recordings.  That repeal expressed the legislature's clear intent

to unburden the *common law* in all respects as to the protection of pre-1972

recordings.[7]  Despite recognizing the significance of this repeal, SiriusXM attempts to minimize its import by arguing it did not grant owners "unlimited protection" under the common law.  **(SXM:27-30)**  Once again, SiriusXM professes a profound misunderstanding of the common law, ***which exists without a legislative grant of rights***.  Flo & Eddie has not argued that the repeal *granted* rights; rather, its repeal *removed all impediments* to the enforcement of the common law.

Equally misguided is SiriusXM's argument that there would have been no need to maintain the ***criminal*** liability for pirating pre-1972 recordings as set forth in §540.11 "[i]f the repeal of Section 543.02 had granted pre-1972 recording owners unlimited protection."  **(SXM:28)**  *Criminal* liability for piracy would not exist without an express legislative grant; thus, its retention was necessary if *Florida* (as opposed to Flo & Eddie) wanted to prosecute wrongdoing.  In any event, it is not at all clear why SiriusXM contends that the partial statutory exemption of broadcasters from *criminal* liability supports its position in this case. *See* Fla. Stat. §540.11(6)(a).  To the contrary, that exemption shows that the Florida legislature knew how to protect broadcasters if it wanted to.  That the legislature chose not to provide broadcasters with similar protection from *civil*

---

[7] SiriusXM claims that the argument regarding §543.02 was waived because it was not raised at the District Court.  **(SXM:27)**  SiriusXM cannot be serious.  Not only has the scope of rights in pre-1972 recordings been an issue at every step of this litigation, but the repeal of §543.02 had been specifically relied on in *Garrod*.

liability is telling.  *Cf. Randall v. Guenther,* 650 So. 2d 1070, 1072 (Fla. Dist. Ct.

App. 1995) (criminal immunity statute does not prevent civil liability).

### D.    SiriusXM's Reliance On *Whiteman* Is Misplaced.

SiriusXM's insistence that this case be decided based on anything but

Florida law reaches its zenith with *RCA Mfg. Co. v. Whiteman*, 114 F.2d 86 (2nd

Cir. 1940), a case that wrongly *predicted* New York law, but which SiriusXM now

claims established a decades-long *nationwide* "consensus" that there is no public

performance right in pre-1972 recordings.  **(SXM:11)**  SiriusXM's canonization of

*Whiteman* fails for two very important reasons.  *First*, *Whiteman* was expressly

overruled in *Capitol Records, Inc. v. Mercury Records Corp.*, 221 F.2d 657 (2d

Cir. 1955)  as legally incorrect.  *Second*, even during its limited life, *Whiteman* did

not stand for the proposition that there was no performance right in recordings.

In *Whiteman*, the only issue addressed was whether after the sale of a

recording, the owner of the artistic performance in that recording could enforce a

restrictive legend on the packaging that stated it was "[n]ot Licensed For Radio

Broadcast."  *Whiteman*, 114 F.2d at 87.  In addressing this limited issue, Judge

Learned Hand assumed that the public sale of a record constituted a "general

publication" *under New York law*, ending all common law copyright protection.

*Id*. at 88-89.  Therefore, Judge Hand reasoned, if all "common law property" rights

"ended with the sale of the records," its owner could not control performances through the use of a restrictive legend on the recording.  *Id*.

Whiteman* did not rule out the *existence* of a public performance right, but rather the ability to *enforce* it after a presumed divestive publication under state law.  And as to this issue, in 1950 (10 years after *Whiteman*), the New York Supreme Court expressed a very different view of its own law, holding that the sale of a record to the public was ***not*** a divestive publication and did ***not*** end common law copyright protection.  *Metro. Opera Ass'n v. Wagner-Nichols Recorder Corp.,* 199 Misc. 786, 798-99 (Sup. Ct. 1950).  The holding in *Metro. Opera* was the exact opposite of what Judge Hand had assumed the law to be in *Whiteman*.  As such, when the Second Circuit revisited the issue in *Mercury Records*, it conceded that its holding in *Whiteman* was wrong.  *Mercury Records,* 221 F.2d at 663. SiriusXM tries to distort the holding in *Mercury Records* by claiming that it only overruled that portion of *Whiteman* that dealt with copying, and nothing else. **(SXM:fn.4)**  That argument certainly cannot be true, since copying was not at issue in *Whiteman*.  SiriusXM's cramped reading of *Mercury Records* is not even supported by Judge Hand, whose dissent in that very case recognizes that if the sale of a record is not a publication (per *Metro. Opera* and the majority opinion in *Mercury Records*), its owner would possess a "perpetual monopoly" and that this monopoly would be "unlimited both in time and in user."  *Id*. at 667.

14

Ironically, contrary to SiriusXM's argument that *Whiteman* made a broad pronouncement regarding the supposed non-existence of a performance right, the case actually establishes just the opposite. Indeed, the *Whiteman* court clearly recognized the existence of such a right; otherwise, it would never have had to reach the publication issue, which was the genesis of its entire decision.

*Whiteman*'s history cannot be changed by the secondary sources upon which SiriusXM relies **(SXM:11, fn.3)**, nor can the authors of those publications undo actual court rulings. The same holds true for statements by the Copyright Office, which exists to interpret and enforce the Copyright Act, not to determine or set Florida law.[8] Thus, it is remarkable that SiriusXM would make *Whiteman* a cornerstone of its opposition in this case by claiming that a Second Circuit case overruled 60 years ago nevertheless defied all jurisdictional boundaries to become – to this day – the law of ***the entire United States***. It is even more remarkable that SiriusXM would make the wildly false claim that *Whiteman* is the "last case from any jurisdiction to address the existence of a common law performance right" **(SXM:2)**, and is the "only other case to analyze a claimed performance right." **(SXM:10)** The seven other cases since *Whiteman* that have enforced a public

---

[8] Even if statements by the Copyright Office were relevant, when properly quoted – which SiriusXM did not do **(SXM:fn.3)** – they support Flo & Eddie. Indeed, the Copyright Office has *directly refuted* SiriusXM's false characterization of its 2011 report. *See* Library of Congress: Copyright Office, Music Licensing Study: Second Request for Comments, 79 Fed. Reg. 141, at 42, 834 n. 3 (July 23, 2014).

performance right in pre-1972 recordings (three of which were lost by SiriusXM in the last year alone) stand in stark contrast.  So too does *Waring v. WDAS Broadcasting Station, Inc.*, 327 Pa. 433 (1937), a case that pre-existed *Whiteman* and found – ***not by predicting state law, but by confirming it*** – that there was a public performance right in recordings at common law.  *Waring,* unlike *Whiteman,* is still good law and yet is nowhere to be found in SiriusXM's brief.[9]

## E.    Public Policy Considerations Are Not The Province Of The Court.

Lacking state law to support its position, SiriusXM relies on a number of public policy arguments to support its claims that are neither accurate, relevant, nor consistent with the role of the court.  The decision in this case must be based on the law, not on the contrived issues that SiriusXM raises as a result of actually having to license the property upon which it built its business.  For example, SiriusXM quotes from rhetorical questions that the District Court improperly factored into its analysis, such as who would "set and administer the licensing rates" for pre-1972 recordings.  **(SXM:32)**  That the District Court even thought it should be concerned with this issue shows how off-the-mark its analysis was.  The free market sets rates and the owners of recordings administer their own rights.

---

[9] *Waring* also highlights SiriusXM's error in relying on testimony before Congress and secondary sources to establish its case.  Indeed, SiriusXM relies on the 1936 Congressional testimony of a representative of Brunswick Records as proof that the record industry did not think that there was a state law performance right. **(SXM:15, 47)**  Leaving aside the broad brush that SiriusXM paints with this testimony, as *Waring* made clear a year later, the testimony was wrong.

Moreover, who owns a particular recording should also have been of no concern to the District Court in determining the scope of protection that ownership provides. The District Court's role is to enforce rights, not speculate about issues or defenses that have not even been raised in actual litigations, much less this litigation. Additionally, the issues that Congress considered when it decided to amend the Copyright Act to grant a performance right with respect to *post*-1972 recordings could not be any more irrelevant. When Congress granted the states the sole and exclusive power to independently protect pre-1972 recordings, Congress did not say "do as we do," but rather "do as you want to do until 2067."[10]

### III.    <u>PROTECTING PRE-1972 RECORDINGS DOES NOT VIOLATE THE COMMERCE CLAUSE</u>.

Even the strongest supporters of the dormant Commerce Clause are not brazen enough to suggest that it can be used to cripple a state's non-discrminatory ability to prevent the theft of property occurring within its own borders. Yet according to SiriusXM, Florida is constitutionally prohibited from doing just that simply because SiriusXM has chosen to operate a nationwide business under terms

---

[10] SiriusXM is not alone in raising irrelevant policy arguments; its amici do the same, arguing that granting a performance right would be generally disruptive **(ARSC:4-5, 14-17; IP Professors:22-23; Various Professors:3, 9-10, 12-14, 18-19, 31; Pandora:2, 6-7, 19-20. 24-30; EFF:3-4, 14-19; NAB:1, 24-28)**, that industry practice and understanding is historically at odds with a performance right **(ARSC:2-5; IP Professors:3, 7-8, 11-18; Pandora:2, 11-20, 5; EFF:8-9; NAB:4-14),** and that any relief should come from the legislature **(ARSC:19-21; Various Professors:36-37; IP Professors:1, 23-24; NAB:24; Pandora:5-6, 20-24)**.

it voluntarily agreed to. That is not the law. Indeed, the limited purpose of the dormant Commerce Clause is to protect against regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors, *New Energy Co. v. Limbach*, 486 U.S. 269, 273, 108 S. Ct. 1803 (1988), not to protect SiriusXM's "particular structure or methods of operation in a retail market." *Exxon Corp. v. Governor of Md.*, 437 U.S. 117, 127, 98 S. Ct. 2207 (1978). But this Court does not even need not delve into the legal contours of the dormant Commerce Clause, as SiriusXM cannot even make a threshold showing that the clause applies given that §301(c) authorizes state protection of pre-1972 recordings and, in any event, that protection is not a "regulation" within the meaning of the Constitution.

## A.    Congress Has Authorized State Protection Of Pre-1972 Recordings.

"[W]hen Congress so chooses, state actions which it plainly authorizes are invulnerable to constitutional attack under the Commerce Clause," *Ne. Bancorp v. Bd. of Governors of Fed. Reserve Sys.*, 472 U.S. 159, 174, 105 S.Ct. 2545 (1985), even if the conduct in question may interfere with interstate commerce. *White v. Mass. Council of Const. Employers, Inc.*, 460 U.S. 204, 213, 103 S.Ct. 1042

(1983).  Here, as the District Court and two other courts have already found,

§301(c) provides that express Congressional authorization.[11]

Section 301(c) codified Congress's intent to not only exempt states from

federal preemption with regard to protection of pre-1972 recordings, but also to

affirmatively and expressly provide the states with the unlimited power to impose

"rights and remedies under the common law or statutes" in order to advance that

protection.  It was on this basis that the Supreme Court in *Goldstein v. California,*

412 U.S. 546, 93 S.Ct. 2303 (1973) held that California could protect pre-1972

recordings without violating the Copyright Clause *or* the Commerce Clause.

In order to avoid *Goldstein* and the plain language of §301(c), SiriusXM

wrongly equates §301(c) to the savings clause (§201(b) of the Federal Power Act)

discussed in *New England Power Co. v. New Hampshire*, 455 U.S. 331, 341, 102

S. Ct. 1096 (1982).  Section 301(c) is *not* a savings clause, which is "used in a

repealing act to preserve rights and claims that would otherwise be lost."  *Black's*

*Law Dictionary* 1461 (9th ed.).  That is what the statute in *New England Power*

did, providing that the Federal Power Act "shall not…deprive a State or State

commission of its ***lawful authority now exercised*** over the exportation of

hydroelectric energy which is transmitted across a State line."  *New England*

*Power*, 455 U.S. at 341 (emphasis added).  By its own terms, it "did no more than

---

[11] *Flo & Eddie Inc.*, 2014 U.S. Dist. LEXIS 139053 at *23 n.1; *Capitol Records,*
*LLC*, 2014 WL 7387972 at *5.

leave standing whatever valid state laws existed." *Id*. That is completely different

from the **prospective** broad and unlimited grant of power to the states under

§301(c) that exists "until February 15, 2067." Contrary to SiriusXM's claims,

§301(c) did not repeal anything and it did not provide that states only had that

power "now exercised" by them; it was an affirmative grant of power. *See* 5 W.F.

Patry, *Patry On Copyright*, §18:55 at 18-198. (2010 ed.)

Courts routinely rely on authorization granted in statutes like §301(c) to

reject dormant Commerce Clause arguments. *See e.g. Sea Air Shuttle v. Virgin

Islands Port Authority*, 800 F. Supp. 293, 304 (D.V.I. 1992) (Federal Aviation Act

provided that it "shall not be construed to limit the authority of any State...to

exercise its proprietary powers and rights."); *Soto* v. *Tu Phuoc Nguyen*, 634 F.

Supp. 2d 1096, 1107 (E.D. Cal. 2009) (statement in §30103(e) of the National

Traffic and Motor Vehicle Safety Act that "[c]ompliance with a motor vehicle

standard under this chapter does not exempt a person from liability at common

law" indicated "an express delegation of power to the states"); *Zimmerman v.

Wolff*, 622 F. Supp. 2d 240, 245 (E.D. Pa. 2008) (Federal Animal Welfare Act

preserved and expressly authorized states to promulgate their own standards with

respect to domestic animals); *Bowers v. NCAA, Inc.*, 151 F. Supp. 2d 526, 538 (D.

N.J. 2001) (Americans with Disabilities Act provided that "[n]othing in this

chapter shall be construed to invalidate or limit the remedies, rights, and

20

procedures of any…law of any State…that provides greater or equal protection for the rights of individuals with disabilities than are afforded by this chapter"); *People ex rel State Bar Resources Bd. v. Wilmhurst*, 68 Cal. App. 4th 1332, 1345 (1999) (Federal Clean Air Act "demonstrates an intent by Congress to grant California the broadest possible discretion"); *L.P. Acquisition Co. v. Tyson*, 772 F.2d 201, 205 (6th Cir. 1985) (rejecting dormant Commerce Clause challenge to state securities statute "because the state is regulating in an area reserved to the states by federal securities legislation").

### B.    Protection Of Pre-1972 Recordings Does Not "Regulate" Interstate Commerce.

SiriusXM's dormant Commerce Clause argument can also be rejected on the alternate grounds adopted in the New York Action; namely, that the protection of the exclusive ownership rights in pre-1972 recordings does not "regulate" commerce ***within the meaning of the Constitution*** as required by *Sherlock v. Alling*, 93 U.S. 99, 23 L. Ed. 819 (1876).  *Sherlock* rejected a view of the Commerce Clause that would abolish the police power of the states, holding that:

> General legislation of this kind, prescribing the liabilities or duties of citizens of a State, without distinction as to pursuit or calling, is not open to any valid objection because it may affect persons engaged in foreign or inter-State commerce....In conferring upon Congress the regulation of commerce, it was never intended to cut the States off from legislating on all subjects relating to the health, life, and safety of their citizens, though the legislation might indirectly affect the commerce of the country.

*Sherlock*, 93 U.S. at 103.

*Sherlock* has been routinely relied on by the Supreme Court, ***including with***
***respect to radio stations broadcasting in multiple states***. *Head v. N.M. Bd. of*
*Examiners in Optometry*, 374 U.S. 424, 428, 83 S. Ct. 1759 (1963) (dismissing
dormant Commerce Clause challenge to a New Mexico statute prohibiting
advertisements that quoted prices or terms for the sale of eyeglasses, despite the
fact that the statute burdened the interstate broadcasting of a radio station); *see also*
*Huron Portland Cement Co. v. Detroit*, 362 U.S. 440, 444, 80 S. Ct. 813 (1960)
(upholding state air pollution laws under *Sherlock*); *GMC v. Tracy*, 519 U.S. 278,
306-07, 117 S. Ct. 811 (1997) (upholding state tax on gas sales under *Sherlock*).

Unable to get out from under *Sherlock*, SiriusXM cites *BMW of N. Am. v.*
*Gore*, 517 U.S. 559, 116 S. Ct. 1589 (1996)  for the proposition that the protection
of property is a "regulation" subject to Commerce Clause scrutiny.  *BMW* did not
discuss *Sherlock*, nor was there a reason to, since the issue presented was whether
a state could "punish [a defendant] for conduct that was lawful where it occurred
and that had no impact on [that state] or its residents." *Id*. at 572-73.  This has
nothing to do with a state's authority to permit compensation to victims for injuries
suffered *within its jurisdiction*.  To offend *Sherlock*, the regulation in question
must be "within the meaning of the Constitution," and the protection of property
against theft occurring entirely within the enforcing state does not qualify as such.

### C.    <u>A Public Performance Right Does Not Violate Either The Per Se Or Balancing Tests</u>.

#### 1.    <u>Per Se</u>.

SiriusXM does not argue that Florida's protection of pre-1972 recordings is discriminatory or inimical to national commerce, only that it is inimical to *SiriusXM's* commerce as a nationwide broadcaster. Thus, according to SiriusXM, because it has no "geographic boundaries," all states must stand down from enforcing property and theft laws. **(SXM:38)** SiriusXM is wrong.

Indeed, as case law illustrates, a defendant's business structure and method of operation ***are not entitled to any Commerce Clause deference whatsoever***. *Exxon*, 437 U.S. at 127-28 ("We cannot, however, accept appellants' underlying notion that the Commerce Clause protects the particular structure or methods of operation in a retail market…[T]he Clause protects the interstate market, not particular interstate firms, from prohibitive or burdensome regulations."); *see also Arrow Air, Inc.* v. *Port Auth. Of New York and New Jersey*, 602 F. Supp. 314, 321 (S.D.N.Y. 1985) ("If a regulation is otherwise valid under the Commerce Clause, it is not rendered invalid simply because an operator has to change its market structure."); *Nat'l Fed'n of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 961 (N.D. Cal. 2006) ("Defendant's argument – that if this court applies the Unruh Act and the Disabled Persons Acts to Target.com, the practical effect will be to force it to modify its website for all customers nationwide – is not sustainable."); *Ferguson*

*v. FriendFinders, Inc.*, 94 Cal. App. 4th 1255, 1264 (2002) (rejecting claim that because of the "very nature of the internet" state law prohibiting unsolicited e-mail advertisements violated the Commerce Clause).

Because SiriusXM recognizes that its national operations are of no legal consequence, it tries to endow those operations with greater significance by making the misleading argument that *its* broadcasts "are required by federal law to be 'nationally uniform.'" **(SXM:43)** In fact, there is no such federal law, nor could there be, as it would violate the First Amendment. *Riley v. Nat'l Fed'n of Blind*, 487 U.S. 781, 800-01, 108 S. Ct. 2667 (1988). SiriusXM is actually referring to the voluntary agreements it made with the FCC during regulatory negotiations in order to overcome the objections of local broadcasters who feared SiriusXM would use its terrestrial repeaters and its 2008 merger with XM Radio to encroach upon their markets for local news, information, and advertising. *See Applications for Consent to the Transfer of Control of Licenses*, 23 FCC Rcd 12348, ¶¶ 73, 154-55 (F.C.C. 2008) ("SiriusXM Merger Order"); *see also Application for Special Temporary Authority*, 16 FCC Rcd 16773, ¶¶ 4, 10-11 (F.C.C. 2001); *Notice of Proposed Rulemaking*, 22 FCC Rcd 22123, ¶¶ 55-57 (F.C.C. 2007).

To address concerns that it would employ this type of predatory conduct, SiriusXM consented to regulations intended to prevent it from engaging in local competitive programming and advertising, activities which "would cause terrestrial

broadcasters to lose advertising revenue" and "ultimately result in the reduction of their production and airing of local programming..." *See* SiriusXM Merger Order at ¶¶ 73, 154-55. SiriusXM's voluntary concessions to the FCC in order to expand its business have no bearing on its obligation to delete infringing content, nor does it shield conduct that violates the property rights of owners of pre-1972 recordings. The FCC demanded those concessions to protect local broadcasters from SiriusXM's predatory conduct, not to nullify Florida's property laws.

SiriusXM's radical view of the effect of *its* national operations would automatically convert all state common law property protections into Commerce Clause violations. Not only would that require Florida's protection of pre-1972 recordings to be declarared unconstitutional, but also various other statutes, including Fla. Stat. §540.08 (unauthorized publication of name or likeness), Fla. Stat. §495.131 (infringment of trademark), and Fla. Stat. §540.11 (unauthorized copying of phonograph records). It is precisely because states are permitted to confer these property rights that dormant Commerce Clause challenges of the type proffered by SiriusXM are routinely rejected. *See Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*, 762 F.3d 829, 837 (9th Cir. 2014) (Washington state law that recognized post-mortem right of publicity not recognized in other states does not impermissibly burden interstate commerce); *A&M Records, Inc. v. Heilman*, 75 Cal. App. 3d 554, 567-68 (1977) (no violation of Commerce Clause

where common law was intended to restrain only activities in, or aimed at, California); *Ferguson,* 94 Cal. App. 4th at 1264 (state regulation of internet advertisements does not violate Commerce Clause).

SiriusXM's "national uniformity" argument is not helped by its reliance on cases such as *Flood v. Kuhn*, 407 U.S. 258, 92 S. Ct. 2099 (1972) or *Nat'l Collegiate Athletic Ass'n v. Miller*, 10 F.3d 633, 638 (9th Cir. 1993). In those cases, the court was addressing the special issue of applying state antitrust laws to regulate ***national sports leagues***.[12] SiriusXM is not a sports league and this is not an antitrust case. Moreover, the national uniformity that may be required with respect to sports leagues has been expressly rejected by the Supreme Court in the context of pre-1972 recordings. *Goldstein*, 412 U.S. at 560 ("No conflict will necessarily arise from a lack of uniform state regulation, nor will the interest of one State be significantly prejudiced by the actions of another.")

Despite the length of its brief, SiriusXM has not cited a single case that sustained a dormant Commerce Clause challenge based upon a violation of a state-specific property right. SiriusXM cannot negate this shortcoming by substituting cases dealing with a state's attempt to regulate conduct "occurring wholly outside that State's borders," such as *Healy v. Beer Inst.*, 491 U.S. 324, 337, 109 S. Ct.

---

[12] Sport leagues are recognized as deserving of different treatment. *Thales Avionics, Inc. v. Matsushita Avionics Sys. Corp*, 2004 U.S. Dist. LEXIS 32433, *8 (C.D. Cal. Aug. 6, 2004).

2491 (1989)  and *Am. Booksellers Found. v. Dean*, 342 F.3d 96 (2d Cir. 2003).

Florida's protection of pre-1972 recordings relates only to conduct occurring in

Florida, which SiriusXM conceded when it argued that the laws of Florida do not

extend beyond the state's borders and thus have no relevance to activities that take

place outside of Florida.  **(Doc.77, p.20)**

### 2.    <u>Balancing Test.</u>

SiriusXM's arguments also find no support in the "*Pike* test," which

provides that a non-discriminatory law "will be upheld unless the burden imposed

on [interstate] commerce is clearly excessive in relation to the putative local

benefits."  *Pike v. Bruce Church, Inc*., 397 U.S. 137, 142, 90 S. Ct. 844 (1970).  In

fact, SiriusXM cannot even make the threshold showing under *Pike*: *i.e.*, that

Florida's protection of pre-1972 recordings imposes a "burden on interstate

commerce that is qualitatively or quantitatively different from that imposed on

intrastate commerce."  *Nat'l Elec. Mfrs. Ass'n v. Sorrell*, 272 F.3d 104, 109 (2d Cir.

2001); *accord S. Waste Sys., LLC v. City of Coral Springs*, 687 F. Supp. 2d 1342,

1370 (S.D. Fla. 2010).   In the absence of an unequal burden – which SiriusXM has

conceded does not exist **(SXM:40)** – the court need not proceed further.  *Id*.

In any event, SiriusXM cannot even establish the *Pike* factors, which is

entirely its burden.  *Hughes v. Oklahoma*, 441 U.S. 322, 336, 99 S. Ct. 1727

(1979).  This burden cannot be satisfied by conclusory statements or claims that

*Flo & Eddie* has failed to make the requisite showing.  Yet in addressing whether there is a Florida-specific interest at stake, that is exactly what SiriusXM does, contending that Flo & Eddie "has yet to identify *any* Florida-specific interest" sufficient to satisfy *Pike.* **(SXM:40)**  SiriusXM not only has the *Pike* burden backwards, but is also wrong as a matter of law, since Flo & Eddie has already established that Florida has a "substantial interest" in protecting property rights.  In fact, property rights "are among the basic substantive rights expressly protected by the Florida Constitution."  *Dep't of Law Enforcement*, 588 So. 2d at 964; Fla. Const. Art. I, §2.

Equally unavailing is SiriusXM's unsupported argument that the "significant economic consequences" for broadcasters if a public performance right is upheld renders its burden more than "incidental" under *Pike*. **(SXM:40)**  SiriusXM ignores that the "incidental burdens to which *Pike* refers are the burdens on interstate commerce that exceed the burdens on intrastate commerce." *S. Waste Sys., LLC*, 687 F. Supp. 2d at 1369-70 (citing *Automated Salvage Transp., Inc. v. Wheelabrator Envtl. Sys., Inc.*, 155 F.3d 59, 75 (2d Cir. 1998)).  SiriusXM's nonsensical claim that the burden of having to negotiate licenses "without the benefit of a registration system or compulsory license agreement" "far outweighs any interest Florida might have" **(SXM:40)**  is belied by two facts: (1) the film and television industries have had no trouble licensing pre-1972 recordings for

decades; and (2) SiriusXM has shown its ability to do the same, recently engaging in this very process when it settled the pre-1972 recording claims of a group of record companies for $210 million and in the process obtained the right to publicly perform those recordings through 2017.[13]  It simply cannot be said that the intended effect of protecting pre-1972 recordings is "clearly excessive" in relation to Florida's substantial interest in doing so when the only burden caused is that broadcasters must license those recordings *like every other industry*.

SiriusXM also cannot satisfy *Pike* with economic doomsaying or decrying a speculative loss of access to pre-1972 recordings, as the dormant Commerce Clause does not incorporate any specific economic theory, and rights that may harm consumers under one economic view are not necessarily unconstitutional as a result.  *See Exxon*, 437 U.S. at 127-28 ("It may be true that the consuming public will be injured by [a probable effect of a regulation], but again that argument relates to the wisdom of the [law], not to its burden on commerce.").

Finally, SiriusXM uses *Pike* to again wrongly invoke the national structure of its business, citing *Am. Libraries Ass'n v. Pataki*, 969 F. Supp. 160 (S.D.N.Y. 1997) and *ACLU v. Johnson*, 194 F.3d 1149, 1162 (10th Cir. 1999).  **(SXM:47)** SiriusXM relies on both cases to argue that the Internet requires uniform regulation.  Of course, that argument has nothing to do with SiriusXM's satellite

---

[13] *See* SiriusXM Holdings Inc., Form 8-K at Item 8.01 (June 26, 2015), http://sec.gov/Archives/edgar/data/908937/000093041315002915/c81845_8k.htm

broadcasts.  But even with respect to the Internet, later decisions by courts throughout the country upholding state statutes prohibiting spam and forms of fraud perpetrated via e-mail clearly demonstrate that the Internet *is* susceptible to state regulation.  *See e.g. State v. Heckel*, 143 Wash. 2d 824, 839-40 (2001) (distinguishing regulating all Internet communications as in *Pataki* and regulating directed communication under Washington's anti-spam statute); *Beyond Sys. v. Keynetics, Inc.*, 422 F. Supp. 2d 523 (D. Md. 2006) (state statute protecting Maryland residents from spam did not violate Commerce Clause); *Nat'l Fed'n of the Blind*, 452 F. Supp. 2d 946 (holding California's version of the Americans with Disabilities Act to defendant's website did not violate Commerce Clause).

Flo & Eddie is not, as SiriusXM contends, trying to regulate the Internet.  It is protecting pre-1972 recordings from being unlawfully exploited – in part, on the Internet.  This distinction is critical.  *See People ex rel. Brown v. PuriTec*, 153 Cal. App. 4th 1524, 1533 (2007).  SiriusXM's piratical activity is not immunized by the medium through which it elects to engage in piracy.  *See Ford Motor Co. v. Texas Dep't of Transp.*, 106 F. Supp. 2d 905, 909 (W.D. Tex. 2000) ("[a]n activity which is appropriately regulated when accomplished through any other medium [does not] become[] sacrosanct when accomplished through the internet.").

**IV.     IT WAS ERROR FOR THE DISTRICT COURT TO SUMMARILY ADJUDICTE THE NON-COPYRIGHT CLAIMS**.

The District Court never addressed the specific elements of Flo & Eddie's non-copyright state law claims, simply rejecting them as derivative of the common law copyright claim.  The District Court did not rely on any law in reaching this conclusion and made no attempt to explain how all the claims could be co-extensive, particularly given that one of the claims was separately based on Florida's *civil theft statute*.  The District Court's attempt to define the scope of Flo & Eddie's *statutory* rights based on the supposed lack of a performance right under common law copyright is particularly odd given that the District Court rejected the common law copyright claim because it was the legislature that supposedly needed to grant that right.  In other words, according to the District Court, the common law copyright claim fails because it requires a statute and the statutory civil theft claim fails because the common law does not support it.  The circularity of the District Court's analysis is difficult for even SiriusXM to explain.  Equally difficult for SiriusXM to explain is why it is not liable for each of the non-copyright claims or how the District Court could summarily adjudicate such fact-intensive claims.

**A.     Unfair Competition.**

Under the test used in *Garrod*, because Flo & Eddie expended time, labor, and money to create its pre-1972 recordings, and SiriusXM misappropriated those recordings to compete with Flo & Eddie in the music marketplace, SiriusXM

engaged in unfair competition. **(F&E:37-39)**.[14] SiriusXM responds by claiming that "[t]he *Garrod* test...[is] expressly limited to 'cases involving record piracy.'" **(SXM:46)** This is just such a case, notwithstanding SiriusXM's self-serving attempt to narrowly define piracy as everything but *its* misappropriation of Flo & Eddie's property. Like Florida law, the definition of piracy is not limited to a particular unauthorized use, but rather "is a lay term susceptible to many definitions," *Nat'l Union Fire Ins. Co. v. Siliconix, Inc.*, 729 F. Supp. 77, 80 (N.D. Cal. 1989), including the "unauthorized distribution *or use* of copyrighted works." *Microsoft Corp. v. Big Boy Distrib. LLC*, 589 F. Supp. 2d 1308, 1324 (S.D. Fla. 2008) (citing *Merriam Webster's Dictionary of Law*) (emphasis added); *see also Big Sur Waterbeds v. Maryland Cas. Co.,* 1992 U.S. Dist. LEXIS 22596, *13-14 (C.D. Cal. Dec. 22, 1992) (defining piracy as "the unauthorized appropriation or use of a copyrighted or patented work, idea, etc.") (quoting *Random House College Dictionary* at 1011 (rev. ed. 1980)); *Oxford English Dictionary* at 897 (2d. ed. 1989) ("Infringement of the rights conferred by a patent or copyright."). The definition of piracy is as applicable here as it was in *Garrod*.

---

[14] SiriusXM misleadingly claims that Flo & Eddie conceded that the parties do not compete with one another. **(SXM:44-46)** What Flo & Eddie said is that it does not compete with SiriusXM *in providing satellite or Internet music services*. Where they do compete, however, is that they are both selling the same music, but only one of which has the right to.

Moreover, the whole purpose of the *Garrod* test was not to distinguish between piratical and non-piratical uses of pre-1972 recording, but to distinguish the misappropriation of pre-1972 recordings from those situations where "the unfair competition claim is based upon 'reverse passing off.'" *Ediciones Musicales y Representaciones Internacionales, S.A. v. San Martin,* 582 F. Supp. 2d 1358, 1361 (S.D. Fla. 2008). The *Garrod* test recognized the elasticity and flexibility of Florida unfair competition law, as well as the admonition of the Supreme Court in *Int'l News Serv. v. AP*, 248 U.S. 215, 39 S.Ct. 68 (1918) to avoid reaping where you have not sown. While a repeated mantra of SiriusXM in every one of the *Flo & Eddie* litigations is that *International News* is not good law because of *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817 (1938), this argument completely ignores that the holding in *International News* has been adopted as state law in every state where SiriusXM has made its argument – thus, rendering *Erie* irrelevant.

Under Florida law, the theft of Flo & Eddie's property is the consummate "business conduct which is contrary to honest practices in industrial or commercial matters." *AlphaMed Pharms. Corp. v. Arriva Pharms., Inc.*, 432 F. Supp. 2d 1319, 1353 (S.D. Fla. 2006). SiriusXM's characterization of that theft as "free riding" is both shameless and antithetical to the protection of property. Indeed. "[t]he ability to exclude free riders – is now understood as essential to economic development,

and to the avoidance of the wasting of resources found under common property systems." *Hendler v. United States*, 952 F.2d 1364, 1375 (Fed. Cir. 1991) (citations omitted)  It is for this reason that SiriusXM's conceptualization of free riding finds no support in any of its cited cases (which involve protection of "hot news," not copyrighted works) **(SXM:48)**, and does not override Flo & Eddie's "legitimate business decision" not to allow SiriusXM to use its recordings for free. *Morris Communs. Corp. v. PGA Tour, Inc.*, 117 F. Supp. 2d 1322, 1329 (M.D. Fla. 2000).[15]

Finally, SiriusXM's contention that a "bootlegger's illicit copying and sale of a recording is not comparable to [its] performance of a lawfully obtained recording on the radio…" is a false rationalization.  (**SXM:46**)  The purchase of a recording does not allow the purchaser to commercially exploit it – and this is true whether the purchaser is selling the sounds embodied in the recordings as unauthorized bootlegs or is selling those same sounds to 28 million subscribers as unauthorized streams and broadcasts.  SiriusXM purchased only the recording, not the intangible property rights embodied in that recording.  *See e.g.*, *Sony Music Entm't v. Clark Entm't Grp.*, 183 B.R. 73, 79 (Bankr. D.N.J. 1995) (intellectual

---

[15] SiriusXM's reliance on *WCVB-TV v. Boston Athletic Ass'n*, 926 F.2d 42 (1st Cir. 1991) is also misplaced.  *WCVB-TV* is a trademark case where free riding was deemed irrelevant because the plaintiff had not shown a likelihood of confusion. *Id*. at 45.

property rights in pre-1972 recordings "are separate and distinct from the material objects in which the work is embodied, so that an author has the power to convey ownership in the material object (e.g. a book) while reserving common law copyright (e.g. the right to publish, reproduce or exploit the prose)" [citation omitted]).  SiriusXM's purchases allow it to listen to the recordings it purchased, which is both an authorized use and the reason that recordings are sold at retail.[16]

## B.    Conversion and Civil Theft.

SiriusXM challenges Flo & Eddie's conversion claim by arguing that "there has been no deprivation" of any property because SiriusXM "merely performed its own lawfully obtained copies of plaintiff's recordings."  **(SXM:48)**  That argument is wrong both because the purchase of a recording does not come with a license to commercially exploit that recording and because the performance of those recordings dispossesses Flo & Eddie of *that performance's benefits*.

SiriusXM cannot salvage its argument by contending that since Flo & Eddie was still "free to make or license its own performances of [its] recordings," it has not been deprived of a business opportunity.  **(SXM:49)**  SiriusXM cites *Warshall v. Price*, 629 So. 2d 903 (Fla. Dist. Ct. App. 1993) as supporting this proposition;

---

[16] SiriusXM makes the nonsensical argument that a ruling in favor of Flo & Eddie would prevent someone from listening to the recording at a private party or in their car with the windows rolled down.  Neither of those activities is a ***public*** performance, nor the least bit relevant to whether SiriusXM can sell the sounds embodied in pre-1972 recording by ***publicly*** performing them.

however, it actually holds just the opposite.  Indeed, *Warshall* squarely rejected

SiriusXM's argument when it held that "[i]t is not necessary for a person to

deprive another of *exclusive possession* of their property in order to be liable for

conversion."  *Id*. at 904.  Flo & Eddie need only show that it "was denied the

benefit" of its recordings when SiriusXM took copies and used them to Flo &

Eddie's disadvantage.  *Warshall*, 629 So. 2d at 905 (finding "a cause of action for

conversion was appropriate" for copying a patient list, "even though [the plaintiff]

at all times had access to his own [copy].");  *see also Joe Hand Promotions, Inc. v.

Hart*, 2012 U.S. Dist. LEXIS 53335, *5-6 (S.D. Fla. Apr. 16, 2012) (unauthorized

taking of television broadcast of a fight constituted conversion); *Garrod*, 622 F.

Supp. at 536 (conversion found with respect to the unauthorized taking of the

"time, effort and expense" of producing records); *Total Mktg. Techs. v. Angel

Medflight Worldwide Air Ambulance Servs., LLC*, 2012 U.S. Dist. LEXIS 1829, *9

(M.D. Fla. Jan. 6, 2012) (conversion found for wrongfully asserting dominion over

plaintiff's confidential business information by diverting phone calls from

plaintiff's customers to another company); *Intelsat Corp. v. Multivision TV LLC*,

2010 U.S. Dist. LEXIS 138955, *14-16 (S.D. Fla. Dec. 27, 2010) (stating that

"[t]he allegations of [defendants'] unauthorized transmissions to the satellite and

the concomitant disruption of service are acts of dominion over [plaintiff's] satellite services inconsistent with [plaintiff's] ownership.").[17]

SiriusXM also attempts to argue that "plaintiff [cannot] establish that Sirius XM's performances were wrongful or made with wrongful intent." **(SXM:50)** Intent is inherently a jury issue not susceptible to summary judgment, *Sebastiano v. Fla.*, 14 So. 3d 1160, 1164 (Fla. Dist. Ct. App. 2009), particularly since it can be "inferred from the acts of the parties and from the surrounding circumstances," *State v. West*, 262 So. 2d 457 (Fla. Dist. Ct. App. 1972). Here, SiriusXM knew that it did not own the recordings it was exploiting and lacked licenses from the owners thereof. Yet, based on the patently false excuse that pre-1972 recordings were in the public domain – an excuse no Florida lawyer could endorse in light of *Garrod* – SiriusXM decided it would forgo licenses and the payment of royalties. **(Dkt:94-24)** SiriusXM's "public domain" argument was a pretext to exploit pre-1972 recordings for free. It simply took what it wanted in complete and utter disregard for the rights of the owners of those recordings. That is intent, *Shaw v. State*, 510 So. 2d 349, 351 (Fla. 2d DCA 1987), which is neither ameliorated nor excused by the fact that SiriusXM "openly broadcast recordings for years."

---

[17] Sirius XM's claim that "courts have dismissed conversion claims grounded in the unauthorized use of a plaintiff's copyrighted work" **(SXM:48)** ignores that those cases involve *federally* copyrighted works, meaning state law conversion claims that were subject to preemption under 17 U.S.C. §301(a). *See Garrido v. Burger King Corp.*, 558 So. 2d 79, 81-82 (Fla. Dist. Ct. App. 1990).

**(SXM:50-51)**  Indeed, the brazenness of the theft does not diminish the intent, which exists if there is an intent to temporarily or permanently deprive or appropriate the property, or a benefit from the property of another.  Fla. Stat. §812.014(1); *Country Manors Asso. v. Master Antenna Sys.*, 534 So. 2d 1187 (Fla. Dist. Ct. App. 1988); *State v. Dunmann*, 427 So. 2d 166 (Fla. 1983).[18]

In any event, SiriusXM cannot even contest intent in this case (either at summary judgment or at trial) since it refused to provide discovery regarding all matters that it admitted informed that intent.  Indeed, despite testifying that legal advice formed its intent, SiriusXM chose not to disclose that advice.  **(Dkt.94-25)** The law is clear that a party may not testify as to its intent or assert that it believed that its conduct was in good faith while at the same time shielding from discovery privileged communications and analysis that bear on its state of mind.  *United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991); *see also Cox v. Adm'r United States Steel & Carnegie*, 17 F.3d 1386 (11th Cir. 1994), *Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc.*, 552 F.3d 1033 (9th Cir. 2009).  And this is true even if the party is not claiming advice of counsel.  *Leviton Mfg. Co. v. Greenberg*

---

[18] SiriusXM overstates the holding in *Tedder v. State*, 73 Fla. 861, 862 (1917) and *Siplin v. State*, 972 So. 2d 982, 987 (Fla. Dist. Ct. App. 2007) by claiming that where the "taking is open," it cannot be found to have criminal intent.  Those cases did not deal with *civil* theft and did not create a *bar* to criminal intent.  In criminal theft cases, *Tedder* simply created a rebuttable presumption. 73 Fla. at 862.

*Traurig LLP*, 2010 WL 4983183, at *3 (S.D.N.Y. Dec. 6, 2010) (quoting *John Doe Co. v. United States*, 350 F.3d 299, 306 (2d Cir. 2003)).

## V.    SIRIUSXM IS LIABLE FOR ITS REPRODUCTIONS.

SiriusXM admits that it not only reproduced thousands of pre-1972 recordings to populate numerous different libraries and databases for itself and third parties, but that it also makes additional copies each time it broadcasts or streams a recording.  Because SiriusXM also admits that the ownership of a pre-1972 recording includes an exclusive reproduction right and that every copy it made of a pre-1972 recording was unauthorized, SiriusXM's liability for violation of common law copyright is firmly established under Florida law.

In order to escape its admissions, SiriusXM contends that in the absence of a public performance right, it is "fair use" for it to take all other rights as it desires. That pernicious argument finds no support in Florida law, which is why SiriusXM once again turns to federal copyright law in an attempt to constrain Florida law. Indeed, in blatant disregard of §301(c)'s mandate, SiriusXM argues that the fair use limitations of 17 U.S.C. §107 (and the case law interpreting that provision) should be superimposed on Florida law.  **(F&E:32-35)**  That is impermissible.

So too is SiriusXM's argument that it was within the District Court's discretion to even consider fair use even though the issue was raised by SiriusXM for the first time as part of its summary judgment *reply*.  Due process and Rule 56

require so much more than that, particularly given that SiriusXM is now collaterally estopped from making many of the factual arguments that it claims justify a finding of fair use, including the lynchpin of its argument: that there is no market harm resulting from its reproductions.  As the district court in New York found: "Sirius makes non-transformative use of Flo and Eddie's recordings and does so for commercial gain.  It is, therefore, 'common sense[],' [Citation], that Flo and Eddie would suffer market harm when Sirius takes its property and exploits it, unchanged and for a profit.  That exploitation 'supersedes the objects of the original.'"  *Flo & Eddie, Inc.*, 62 F. Supp. 3d at 347.

## VI.    <u>CONCLUSION</u>.

Because the District Court applied the wrong law to erroneously conclude that (1) the public performance right is not one of the protectable rights inherent in ownership of pre-1972 recordings, (2) the creation of buffer copies does not violate the reproduction right, and (3) claims of unfair competition, conversion, and civil

theft are all derivative of common law copyright infringement, the District Court's summary judgment order should be reversed in its entirety.

Dated:  November 24, 2015                Respectfully submitted,


                                         By:   /s/ Harvey W. Geller

                                         GRADSTEIN & MARZANO, P.C.
                                         Henry Gradstein
                                         Maryann R. Marzano
                                         Harvey Geller
                                         6310 San Vicente Blvd., Suite 510
                                         Los Angeles, California 90048
                                         Telephone:  (323) 776-3100

                                         HELLER WALDMAN, P.L.
                                         Glen H. Waldman, Esq.
                                         Jason Gordon, Esq.
                                         3250 Mary Street, Suite 102
                                         Coconut Grove, Florida 33133
                                         Telephone:  (305) 448-4144
                                         Telecopier:  (305) 448-4155

                                         Attorneys for Plaintiff-Appellant
                                         FLO & EDDIE, INC.

## CERTIFICATE OF COMPLIANCE

The brief complies with this Court's November 12, 2015 order granting Flo & Eddie an additional 3,000 words and Fed. R. App. P. 32(a)(7)(B) because it contains 9,946 words (based on Microsoft Word word-count function), excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(b)(iii).  The brief also complies with the typeface requirements of Fed. R. App. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word in 14 point Times New Roman.

Dated:  November 24, 2015               Respectfully submitted,

By:   /s/ Harvey W. Geller

GRADSTEIN & MARZANO, P.C.
Henry Gradstein
Maryann R. Marzano
Harvey Geller
6310 San Vicente Blvd., Suite 510
Los Angeles, California 90048
Telephone:  (323) 776-3100

HELLER WALDMAN, P.L.
Glen H. Waldman, Esq.
Jason Gordon, Esq.
3250 Mary Street, Suite 102
Coconut Grove, Florida 33133
Telephone:  (305) 448-4144
Telecopier:  (305) 448-4155

Attorneys for Plaintiff-Appellant
FLO & EDDIE, INC.